MICV2004-01104

Dwight Richard Harris, II

v.

Foodlogic, LLC, et al.

Removed to United States District Court

4.   The defendant, Emanuel Gerard ("Gerard"), is an individual who currently resides at One East End Avenue, New York, NY.   Gerard is a Manager of FoodLogic.

5.   The defendant, Robert Abel ("Abel"), is an individual who currently resides at Union Wharf, Boston, Massachusetts. Abel is a Manager of FoodLogic.

6.   By letter dated August 20, 2001, FoodLogic and its Managers (Sender, Abel and Gerard - collectively the "Managers") offered an employment position to Harris.   Harris was offered the position of Director of Supply Chain Management and Logistics ("Director of Operations") at a rate of One Hundred Seventy-Five Thousand Dollars ($175,000.00) per year.   Harris was also offered benefits such as full health insurance coverage, paid time off, vacation, full relocation expenses and participation in FoodLogic's "Cash Bonus Plan" - which was described as a "vehicle for distribution of cash profits and terminal value distributed to management and consultants."

7.   On or about September 4, 2001, Harris and Sender had a telephone conversation during which Harris and Sender discussed the employment offer.   During the conversation, Sender confirmed the terms of the offer and informed Harris that, in addition to the original terms of the offer, the Managers agreed to: full sponsor (make full payment for) Harris' attendance at the 2002 Agribusiness Seminar at the Harvard Business School (which

2

Harris attended in 2003 because he was not permitted to attend in 2002); pay for Harris' transitional living expenses; and give Harris the opportunity to invest between $25,000.00 and $50,000.00 in the company.

8.    By letter dated September 4, 2001 to Sender, Harris formally accepted FoodLogic's offer for him to become FoodLogic's Director of Operations.  The acceptance letter, referred to above, contained the new terms agreed to by Sender and Harris during the telephone conversation of September 4, 2001.

9.    In reliance on the promises of Sender and FoodLogic's other Managers, Harris moved to Boston to begin his employment with FoodLogic.

10.    Harris began working for FoodLogic on or about October 8, 2001 and worked continuously, on a full-time basis, as its Director of Operations until at least August 16, 2002 when Harris was forced to terminate his employment relationship with FoodLogic due to the company's repeated failure to compensate him for his services.

11.    The compensation Harris received from FoodLogic and its Managers was spotty and, at best, substantially delayed and incomplete.

12.    Harris received no compensation from the commencement of his employment, in October of 2001, through January 1, 2002.

After discussions with Sender regarding the Managers' failure to fulfill their promise to compensate Harris, despite Harris' continual work for the company, FoodLogic began issuing Harris biweekly payments, not for the full amount to which he was entitled, but for Seventy-Five Percent (75%) of the agreed upon salary. FoodLogic made these reduced payments to Harris for the period of January 2002 through July 2002, at which point the payments ceased altogether. Even after the Managers abruptly stopped compensating Harris, Harris continued to fulfill his obligations and provide the company with his services through at least August 16, 2002 - while all along being promised that payment for such services would eventually be made to him.

13. Neither FoodLogic nor its Managers ever made any payment to Harris for Harris' promised attendance at the 2002 (or 2003) Agribusiness Seminar at the Harvard Business School. Harris advanced his own funds to pay for the seminar.

14. Neither FoodLogic nor its Managers ever made payment to Harris for Harris' transitional living expenses. Harris advanced his own funds (approximately One Thousand Six Hundred Dollars ($1,600.00) to pay for his transitional living expenses until he became situated in Boston.

15. Neither FoodLogic nor its Managers ever made payment to Harris for Harris' relocation expenses. Harris advanced his own funds to pay for his relocation from Atlanta to Boston.

4

16.    Neither FoodLogic nor its Managers ever permitted Harris to participate in FoodLogic's "Cash Bonus Plan."   Harris was always led to believe that he was, in fact, a participant in the plan and that such participation would yield him a share of the company's profits.

17.    Documents produced to Harris by Sender and FoodLogic's Controller, Celine Foster, during his employment with FoodLogic served to acknowledge that substantial funds were owed to Harris for the services he performed for the Managers and the company. However, the Managers and the company have chosen to ignore their payment obligations to Harris with the hope of never having to make any payments to Harris whatsoever.

18.    Harris has learned through numerous conversations with other former employees and independent contractors of Sender and FoodLogic that this is not the first instance in which FoodLogic and the Managers have failed to pay for services performed for them and the company.   Such pattern of conduct is consistent with the Managers' having made fraudulent misrepresentations to Harris (as well as other employees and contractors) in an attempt to extract high-level services in exchange for promises which the Managers and the company never had any intention of keeping.

19.    Since leaving the employment of FoodLogic, Harris has made numerous telephone calls to Sender and sent numerous e-

5

mails and several letters to Sender in an attempt to collect the compensation owed to him. These attempts have been unsuccessful and the Managers continue to refuse payment for the services rendered by Harris.

## COUNT I
## BREACH OF CONTRACT/AGREEMENT
## HARRIS V. FOODLOGIC

20. Harris restates and incorporates paragraphs 1-19 as fully set forth herein.

21. FoodLogic and Harris agreed that Harris would move from Atlanta to Boston to work as FoodLogic's Director of Operations and apply his significant experience in the food and beverage industry to the company in exchange for: an annual salary of One Hundred Seventy-Five Thousand Dollars ($175,000.00); full health benefits; paid time off; vacation; full relocation expenses; participation in FoodLogic's "Cash Bonus Plan;" full sponsorship at the 2002 Agribusiness Seminar at the Harvard Business School; transitional living expenses; and the opportunity to invest between $25,000.00 and $50,000.00 in the company.

22. FoodLogic breached its agreement with Harris by failing to make payment to Harris of the agreed-upon salary; and by failing to make payment of relocation, transitional living, and seminar reimbursement payments to Harris. Additionally, the

company failed to provide the other benefits offered - such as the "Cash Bonus Plan."

23. As a result of the breaches committed by FoodLogic, Harris has sustained damages in the amount of One Hundred and Three Thousand Seventy-Five Dollars and Thirty-Three Cents ($103,075.33), as well as interest, costs and attorney's fees.

## COUNT II
## QUANTUM MERUIT
## HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

24. Harris restates and incorporates paragraphs 1-23 as fully set forth herein.

25. As a result of the services performed by Harris for FoodLogic and the Managers, FoodLogic and the Managers have been unjustly enriched.

26. FoodLogic and the Managers continue to refuse payment to Harris for the services he has rendered for which no payment has ever been made.

27. As a result, Harris has sustained damages in the amount of Eighty-Eight Thousand Five Hundred and Nine Dollars and Fifty-Nine Cents ($88,509.59), in addition to interest, costs and attorney's fees.

## COUNT III
## INTENTIONAL MISREPRESENTATION (FRAUD)
## HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

28. Harris restates and incorporates paragraphs 1-27 as fully set forth herein.

7

29.  By its promises and actions enumerated above,
FoodLogic and the Managers intentionally enticed Harris to
accept a position with them, move across the country – from
Atlanta to Boston, and provide services to the company and the
Managers.

30.  Such intentional representations were made for the
purpose of causing Harris to rely on the promises made – which
Harris did, in fact, rely upon.

31.  Harris relied upon the Managers' and FoodLogic's
representations to his detriment as he was never fully
compensated for his services and was never reimbursed for
certain expenses which he was promised would be covered by the
Managers or the company.

32.  As a result of their intentional misrepresentations,
Harris has sustained damages in the amount of One Hundred and
One Hundred and Three Thousand Seventy-Five Dollars and Thirty-
Three Cents ($103,075.33), as well as interest, costs and
attorney's fees.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
## HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

33.  Harris restates and incorporates paragraphs 1-34 as
fully set forth herein.

34.  FoodLogic and the Managers failed to exercise due
care, which they owed to Harris, when they made their promises

8

to Harris and during the term of his employment with the company.

35. FoodLogic and the Managers knew, or should have known, that they either would not make payments to Harris as promised or would not be able to make payments to Harris as promises.

36. FoodLogic and the Managers never disclosed to Harris that such payments would not be forthcoming or might not be forthcoming.

37. As a result, Harris relied on the Managers' representations to his detriment and has sustained damages in the amount of One Hundred and Three Thousand Seventy-Five Dollars and Thirty-Three Cents ($103,075.33), as well as interest, costs and attorney's fees.

COUNT V
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

38. Harris restates and incorporates paragraphs 1-37 as fully set forth herein.

39. FoodLogic and the Managers had a duty to act in good faith and deal fairly with Harris during their negotiations, and ultimately Harris' employment relationship with them.

40. This duty arose, impliedly, out of FoodLogic's and the Managers' contract/agreement with Harris.

41. This duty included the requirement that no party shall do anything that will have the effect of destroying or injuring

9

the right of the other party to receive the fruits of the
contract/agreement.

42.   Neither FoodLogic nor its Managers acted in good faith
in its dealings with Harris, and Harris was deprived of his
rights under the established contract/agreement while the
company and its Managers benefited from his services without
properly or fully compensating him.

43.   As a result, Harris sustained damages in the amount of
One Hundred and Three Thousand Seventy-Five Dollars and Thirty-
Three Cents ($103,075.33), as well as interest, costs and
attorney's fees.

### COUNT VI
### VIOLATION OF M.G.L. c. 149, § 148
### HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

44.   Harris restates and incorporates Paragraphs 1-39 as
fully set forth herein.

45.   Pursuant to the Agreement, Harris was an employee of
FoodLogic.

46.   Pursuant to the Agreement between Harris, FoodLogic
and its Managers, Harris was entitled to an annual salary of One
Hundred Seventy-Five Thousand Dollars ($175,000.00).

47.   As set forth herein, FoodLogic and its Managers have
failed to pay Harris wages that he is owed under his salary.

10

48.  As a result of FoodLogic's and its Managers' refusal
to pay Harris the compensation that he is owed, they have
violated M.G.L. c. 149, § 148.

49.  In accordance with M.G.L. c. 149 §§ 148 and 150, and
c. 151 §§ 1B and 20, Harris has the right to exercise private
suit and recover his lost wages in addition to treble damages,
and attorneys fees.

50.  As a result, Harris is entitled to all of his lost
wages, treble damages, interest, costs, and attorneys fees.

### COUNT VII
### VIOLATION OF FAIR LABOR STANDARDS ACT
### ("FLSA"), 29 U.S.C. § 201, *et seq.*,
### HARRIS V. FOODLOGIC, SENDER, ABEL AND GERARD

51.  Harris restates and incorporates Paragraphs 1-50 as
fully set forth herein.

52.  Pursuant to the Agreement, Harris was an employee of
FoodLogic.

53.  Pursuant to the Agreement between Harris, FoodLogic
and its Managers, Harris was entitled to an annual salary of One
Hundred Seventy-Five Thousand Dollars ($175,000.00).

54.  As set forth herein, FoodLogic and its Managers have
failed to pay Harris wages that he is owed under his salary.

55.  As a result of FoodLogic and its Managers refusal to
pay Harris the compensation that he is owed, they have violated
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

11

56.   FoodLogic's and its Managers' refusal to pay Harris
was willful and their conduct constituted an intentional
disregard for Harris's rights pursuant to the FLSA.

57.   As a result, Harris is entitled to all of his lost
wages, liquidated damages, interest, costs, and attorneys fees.

WHEREFORE, the plaintiff, D. Richard Harris, hereby
requests that the Court enter judgment in his behalf, and
against the defendants, FoodLogic, LLC, Florence Sender, Robert
Abel and Emanuel Gerard, and award to D. Richard Harris, the
following damages:

1.   Eighty-Eight Thousand Five Hundred and Nine Dollars
and Fifty-Nine Cents ($88,509.59) for services rendered to
FoodLogic by Harris from the period of October 4, 2001 through
at least August 16, 2002;

2.   Nine Thousand One Hundred and Sixty-Five Dollars and
Seventy-Four Cents ($9,165.74) for relocation expenses;

3.   One Thousand Six Hundred Dollars ($1,600) for
transitional living expenses;

4.   Three Thousand Eight Hundred Dollars ($3,800.00) for
the Harvard Business School Agribusiness Seminar which was
promised to Harris during Harris' negotiation of the original
employment agreement; and

5.   Interest, costs, attorneys' fees, double or triple
damages and such other relief as this Court deems just.

## DEMAND FOR JURY TRIAL

The plaintiff, D. Richard Harris, hereby claims a trial by jury on all claims stated herein.

DWIGHT RICHARD HARRIS, II,

By his attorneys,

Dated: March 11, 2005

Charles F. Rodman, BBO#641216
William R. Bagley Jr., BBO#644575
DUNBAR & RODMAN LLP
One Gateway Center
Suite 405
Newton, MA 02458
(617)244-3550

## **CERTIFICATION**

I certify that a copy of the foregoing was sent this date via U.S. mail to Spencer C. Demetros, Esquire, counsel for Defendants.

Dated: March 11, 2005    By:    William R. Bagley Jr.

# DUNBAR & RODMAN LLP

ONE GATEWAY CENTER • SUITE 405
NEWTON, MASSACHUSETTS 02458
TEL: (617) 244-3550
FAX: (617) 244-6363
WEB: WWW.DR-LLP.COM

*FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
MAR 14 2005
Edward J. Sullivan
CLERK*

March 11, 2005

Middlesex Superior Court
Civil Clerk's Office
40 Thorndike Street
Cambridge, MA 02141

Re:    Dwight Richard Harris, II v. FoodLogic, LLC, et al.
       Middlesex Superior Court Civil Action No. 04-1104-J

Dear Madam/Sir:

Enclosed for filing please find the Plaintiff's, Amended Complaint And Demand For Jury Trial.

If you have any questions, please feel free to contact me.

Very truly yours,

William R. Bagley, Jr.

WRB/alf
Enclosure
Cc:    Spencer C. Demetros, Esquire (by regular mail w/enclosure)
       D. Richard Harris (by regular mail w/enclosure)

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT



)
)
DWIGHT RICHARD HARRIS, II,    )
)
        *Plaintiff,*    )
)
    v.    )    CIVIL ACTION NO.: 2004-MCV-01104-J
)
FOODLOGIC, L.L.C., FLORENCE )
SENDER, ROBERT ABEL and    )
EMANUEL GERARD,    )
)
        *Defendants.*    )
)
)

FILED
THE OFFICE OF THE
CLERK OF THE COURT
COUNTY OF MID
2005

### ANSWER OF DEFENDANTS FOODLOGIC, L.L.C., FLORENCE SENDER, ROBERT ABEL, and EMANUEL GERARD TO PLAINTIFF'S AMENDED COMPLAINT

Defendants FoodLogic, L.L.C. ("FoodLogic"), Florence Sender ("Sender"), Robert Abel

("Abel"), and Emanuel Gerard ("Gerard"), by their undersigned counsel, for their Answer to the

Amended Complaint ("Complaint") of Plaintiff Dwight Richard Harris, II ("Harris") state as

follows:

    1. Are without knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 1.

    2. Admit the allegations contained in paragraph 2 of the Complaint.

3. Admit the allegations contained in the first sentence of paragraph 3 of the Complaint. State that the second sentence of paragraph 3 asserts a legal conclusion for which no response is required.

4. Admit the allegations contained in the first sentence of paragraph 4 of the Complaint. State that the second sentence of paragraph 4 asserts a legal conclusion for which no response is required.

5. Admit the allegations contained in the first sentence of paragraph 5 of the Complaint. State that the second sentence of paragraph 5 asserts a legal conclusion for which no response is required.

6. Admit that FoodLogic sent Harris a letter date August 20, 2001, state that said letter speaks for itself and deny all other allegations contained in paragraph 6.

7. Admit that Sender had a telephone conversation in early September with Harris in which they discussed Harris's future employment with FoodLogic and that, in that conversation, Harris was informed that he may invest in the company, but deny all other allegations in paragraph 7.

8. Admit that Harris sent Sender a letter dated September 4, 2001, but state that said letter speaks for itself.

9. Defendants deny so much of Paragraph 9 as alleges that FoodLogic, Sender, Abel or Gerard made promises to Plaintiff. Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's motivation for moving to Boston and, therefore, neither admit nor deny the same.

2

10. Defendants admit so much of Paragraph 10 as alleges that Plaintiff began performing services for FoodLogic on or about October 8, 2001 and ceased performing services for the company in the summer of 2002. Defendants deny the remaining allegations contained in Paragraph 10.

11. Deny the allegations contained in Paragraph 11.

12. Deny the allegations in paragraph 12 of the Complaint, except admit that FoodLogic made payments to Harris during the period of January 2002 through July 2002 compensating him for services rendered to FoodLogic.

13. Admit that Food Logic did not fund Harris's attendance at the Agribusiness Seminar, deny that FoodLogic had promised that it would fund Harris's attendance, and are without information or belief as to the rest of the allegations in paragraph 13.

14. Deny the allegations contained in paragraph 14 of the Complaint.

15. Deny the allegations contained in paragraph 15 of the Complaint.

16. Deny the allegations contained in paragraph 16 of the Complaint.

17. Deny the allegations contained in paragraph 17 of the Complaint.

18. Deny the allegations contained in Paragraph 18 of the Complaint.

19. Defendants admit so much of Paragraph 19 as alleges that Plaintiff has communicated with Sender via telephone, and U.S. and electronic mail regarding his compensation. Defendants deny the remaining allegations contained in Paragraph 19.

## COUNT I
## BREACH OF CONTRACT/AGREEMENT
## (HARRIS v. FOODLOGIC)

20. Defendant FoodLogic repeats and incorporates as if fully set forth herein its responses contained in Paragraphs 1 through 19 of this Answer.

21. Defendant FoodLogic denies the allegations contained in Paragraph 21 of the Complaint.

22. Defendant FoodLogic denies the allegations contained in Paragraph 22 of the Complaint.

23. Defendant FoodLogic denies the allegations contained in Paragraph 23 of the Complaint.

## COUNT II
## QUANTUM MERUIT
## (HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

24. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 23 of this Answer.

25. Deny the allegations contained in Paragraph 25 of the Complaint.

26. Deny the allegations contained in Paragraph 26 of the Complaint.

27. Deny the allegations contained in Paragraph 27 of the Complaint.

## COUNT III
## INTENTIONAL MISREPRESENTATION (FRAUD)
## (HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

28. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 28 of this Answer.

4

29. Deny the allegations contained in Paragraph 29 of the Complaint.

30. Deny the allegations contained in Paragraph 30 of the Complaint.

31. Deny the allegations contained in Paragraph 31 of the Complaint.

32. Deny the allegations contained in Paragraph 32 of the Complaint.

COUNT IV
NEGLIGENT MISREPRESENTATION
(HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

33. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 32 of this Answer.

34. Deny the allegations contained in Paragraph 34 of the Complaint.

35. Deny the allegations contained in Paragraph 35 of the Complaint.

36. Deny the allegations contained in Paragraph 36 of the Complaint.

37. Deny the allegations contained in Paragraph 37 of the Complaint.

COUNT V
BREACH OF IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING
(HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

38. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 37 of this Answer.

39. State that Paragraph 39 of the Complaint asserts a conclusion of law for which no response is required.

40. State that Paragraph 40 of the Complaint asserts a conclusion of law for which no response is required.

5

41. State that Paragraph 41 of the Complaint asserts a conclusion of law for which no response is required.

42. Deny the allegations contained in Paragraph 42 of the Complaint.

43. Deny the allegations contained in Paragraph 43 of the Complaint.

COUNT VI
VIOLATION OF M.G.L. ch. 149, § 148
(HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

44. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 43 of this Answer.

45. Deny the allegations contained in Paragraph 45 of the Complaint except admit that, for a period of time, Harris was an employee of Food Logic.

46. Deny the allegations contained in Paragraph 46 of the Complaint.

47. Deny the allegations contained in Paragraph 47 of the Complaint.

48. Deny the allegations contained in Paragraph 48 of the Complaint.

49. State that Paragraph 49 of the Complaint asserts a conclusion of law for which no response is required.

50. Deny the allegations contained in Paragraph 50 of the Complaint.

COUNT VII
VIOLATION OF FAIR LABOR STANDARDS ACT
("FLSA"), 29 U.S.C. § 201, *et seq.*,
(HARRIS v. FOODLOGIC, SENDER, ABEL and GERARD)

51. Defendants repeat and incorporate as if fully set forth herein its responses contained in Paragraphs 1 through 50 of this Answer.

6

52. Deny the allegations contained in Paragraph 52 of the Complaint except admit that, for a period of time, Harris was an employee of Food Logic.

53. Deny the allegations contained in Paragraph 53 of the Complaint.

54. Deny the allegations contained in Paragraph 54 of the Complaint.

55. Deny the allegations contained in Paragraph 55 of the Complaint.

56. Deny the allegations contained in Paragraph 56 of the Complaint.

57. Deny the allegations contained in Paragraph 57 of the Complaint.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole of in part, to state a claim upon which relief can be granted.

#### SECOND AFFIRMATIVE DEFENSE

Harris is barred from recovery by the doctrine of unclean hands.

#### THIRD AFFIRMATIVE DEFENSE

Harris is barred from recovery by the doctrines of waiver and estoppel.

#### FOURTH AFFIRMATIVE DEFENSE

The Defendants were not unjustly enriched because the compensation that Food Logic paid to Harris exceeded the value of any benefits to FoodLogic resulting from the services rendered by Harris to the company.

#### FIFTH AFFIRMATIVE DEFENSE

Harris is barred from recovery because FoodLogic fully performed all of its obligations under the parties' agreements.

## SIXTH AFFIRMATIVE DEFENSE

The contract terms upon which Harris relies fail because there was no meeting of the minds concerning the rights and obligations of the parties.

## SEVENTH AFFIRMATIVE DEFENSE

No statement by any representative of FoodLogic was made to induce any action on the part of Harris.

## EIGHTH AFFIRMATIVE DEFENSE

None of the defendants ever made any knowing misrepresentations to Harris.

## NINTH AFFIRMATIVE DEFENSE

Without admitting that FoodLogic made any promises or representations to Harris, Harris's alleged reliance, if any, was unreasonable.

## TENTH AFFIRMATIVE DEFENSE

Harris is barred from recovery by the doctrines of accord and satisfaction.

## ELEVENTH AFFIRMATIVE DEFENSE

Harris is barred from recovery because any damages it suffered, which FoodLogic disputes, were caused by its own acts or omissions.

## TWELFTH AFFIRMATIVE DEFENSE

Harris is barred from recovery against the individual defendants because they were not his employers.

## THIRTEENTH AFFIRMATIVE DEFENSE

Harris is barred from recovery against Defendants Gerard and Abel because they were not involved with the terms and/or conditions of Harris's employment with Food Logic.

8

## FOURTEENTH AFFIRMATIVE DEFENSE

Harris is barred from recovery against Defendants Gerard and Abel because they had no knowledge of the facts and circumstances surrounding Harris's employment or payment history with Food Logic.

## FIFTEENTH AFFIRMATIVE DEFENSE

The claims asserted in this action against the defendants are frivolous and, therefore, the defendants are entitled to an amount representing reasonable costs and expenses it incurs in defending this action pursuant to M.G.L. ch. 231, § 6F.

WHEREFORE, Defendants respectfully request that judgment be entered:

(1)    dismissing the Complaint, with prejudice;

(2)    awarding Defendants its costs and attorneys' fees incurred in the defense of the Complaint; and

(3)    awarding FoodLogic such other and further relief as the Court may deem just and proper.

Dated: Boston, Massachusetts
      March 28, 2005

DEFENDANTS
FOODLOGIC, L.L.C., FLORENCE
SENDER, ROBERT ABEL and
EMANUEL GERARD,
By their attorney,

Spencer C. Demetros
(BBO #558874)
Law Offices of Spencer C. Demetros
100 Franklin Street, Suite 901
Boston, MA 02110
(617) 423-9955

9

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for all parties to this action by mail on March 28, 2005.

Spencer C. Demetros

FILED
AT THE OFFICE OF THE
CLERK OF THE COURTS

MAR 2005

10